IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA    )
    )
    v    )    CR. NO. 2:05cr119-MEF
    )
RICHARD SCRUSHY    )

**MEMORANDUM OPINION and ORDER**

Now pending before the court are defendant Richard Scrushy's ("Scrushy") motions for discovery (docs. # 955 & 985). The defendant seeks leave to conduct discovery to support his motion for new trial filed pursuant to FED.R.CRIM.P. 33. *See* Docs. # 953 & 1000. Scrushy asserts that the discovery he seeks is necessary because it "would enable [him] to prove the claims set out in [his] motion for new trial." (Doc. # 955, at 2). The United States opposes the defendant's discovery motions asserting that his "theories for relief lack a firm evidentiary basis and merely seek a court-ordered fishing expedition." (Doc. # 975 at 51).

After reviewing the submissions and hearing argument of the parties, the court ordered the United States to produce for an *in camera* review all documents that would be responsive to the defendant's discovery requests. The court has carefully and thoroughly reviewed all material provided by the United States. The material does not further the defendant's claims, does not contain exculpatory material, and contains nothing justifying an evidentiary hearing. Accordingly, for the more detailed reasons that follow, the court

1

concludes that Scrushy's motions for discovery are due to be denied.

## STANDARD OF REVIEW

The court has broad discretion concerning whether to allow discovery on a Rule 33(b) motion for new trial.[1] As explained by the Tenth Circuit, the standard for discovery in the context of a motion for new trial pursuant to FED.R.CRIM.P. 33(b) is analogous to discovery in a habeas corpus proceeding.

> Discovery is authorized in habeas corpus cases, an analogous post-conviction proceeding. *See Blackledge* [*v. Allison*,] 431 U.S. [63] 81-82 [1977] . . . *citing* Rule 6 of the Rules Governing Habeas Corpus. Courts have authority to allow discovery based on the All Writs Act, 28 U.S.C. § 1651, a "legislatively approved source of procedural instruments designed to achieve the rational ends of the law" that "courts may rely upon . . . in issuing orders appropriate to assist them in conducting factual inquiries." *Harris v. Nelson*, 394 U.S. 286, 299, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (internal quotation marks and citations omitted). According to the Supreme Court, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is" entitled to a new trial, "it is the duty of the court to provide the necessary facilities and

---

[1] The defendant's motion for discovery is inextricably tied to his motion for a new trial pursuant to FED.R.CRIM.P. 33.

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence was material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273,1287 (11th Cir. 2003). *See also United States v. Schlei*, 122 F.3d 944, 991 (11th Cir. 1997); *United States v. Starrett*, 55 F.3d 1525,1554 (11th Cir. 1995). "The failure to satisfy any of these elements is fatal to a motion for a new trial." *United States v. Lee*, 68 F.3d 1267, 1274; *Schlei*, 122 F.3d 944 at 991.

Motions for new trial based on newly discovered evidence are highly disfavored in this Circuit and "should be granted only with great caution." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (*en banc*). It is the defendant's burden to justify a new trial. *Id.*

procedures for an adequate inquiry." *Id.*; *see also United States v. Wolfson*, 413 F.2d 804, 808 (1969) (2d Cir. 1969) (in dictum, suggesting that *Harris* applies to Rule 33 motions); 26 James Wm. Moore et al., Moore's Federal Practice § 633.21[3], at 633-50 (3d ed. 2006)  In fulfilling this duty, a district court has broad discretion to fashion discovery mechanisms suitable to the case before it.

*United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007).

Rule 6(a) of the Rules Governing § 2254 Cases provides that "[a] party shall be entitled to invoke processes of discovery available under Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  *See Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court.").   And, no due process problem exists with the federal habeas discovery standard.  *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, ___, 129 S.Ct. 2308, 2321-22 (2009).  "A habeas petitioner ... is not entitled to discovery as a matter of ordinary course."  *Bracy*, 520 U.S. at 904.  The requisite good cause is demonstrated when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Id.* at 908-09 (citation omitted). "Thus, good cause for discovery cannot arise from mere speculation." *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006). As discussed in *Velarde*, *supra*, the court will apply these principles to Scrushy's motion for discovery.

Scrushy also argues that, at a minimum, he is entitled to an evidentiary hearing to

develop facts sufficient to prove the allegations contained within his motion for a new trial. *See* Doc. # 955 at 2. It has long been the law in this circuit that "a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). The only legitimate purpose of an evidentiary hearing within the context of a Rule 33 motion for new trial is "to resolve conflicting evidence." *See Velarde*, 485 F.3d at 549. No such conflicts exists.

## DISCUSSION

Scrushy argues that he is entitled to discovery on four discrete issues in support of his motion for a new trial: (1) selective prosecution in violation of this Fifth Amendment right to equal protection; (2) judicial misconduct involving the court's *ex parte* communications with the government; (3) failure of the United States Attorney to honor her recusal and (4) prosecutorial misconduct, including the government's failure to reveal exculpatory and impeaching information.[2] The court addresses each area seratim.

**1. Selective Prosecution**. Scrushy contends that "he was selectively prosecuted as a result of politically motivated investigation and prosecution," thereby depriving him of a fair trial. (Doc. # 953 at 11). In order to prevail on his motion for new trial based on selective prosecution, Scrushy bears a "demanding burden" of demonstrating by "clear" evidence "that the federal prosecutorial policy had a discriminatory effect and that it was

---

[2] In his motion for discovery, Scrushy frames his requests as two discrete inquiries. However, in his motion for new trial, Scrushy asserts that the government "engaged in a pattern of misconduct" related to witness Nick Bailey. Consequently, the court jointly considers Scrushy's discovery requests on the issues related to "improper witness coaching and withholding of exculpatory and impeaching evidence."

motivated by a discriminatory purpose." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 356 (October 3, 2011) (No. 11-5916). "[I]n order to obtain discovery in support of such a claim, a defendant must provide "some evidence tending to show the existence of the essential elements of the defense." *Id*. The standard for obtaining discovery on this claim is especially rigorous. *United States v. Armstrong*, 517 U.S. 456, 468 (1996) ("The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim").

> [I]n order to establish [his] selective prosecution claim, [the defendant is] required to show that [his] prosecution had a discriminatory effect, i.e., that similarly situated individuals were not prosecuted, and [he was] also required to show that the difference in treatment, or selectivity of the prosecution, was motivated by a discriminatory purpose.

*United States v. Smith*, 231 F.3d 800, 809 (11th Cir. 2000).

Because Scrushy must make "a credible showing of different treatment of similarly situated persons, " the court turns to the question of what constitutes "similarly situated persons." *Armstrong*, 517 U.S. at 470.

> [W]e define a "similarly situated" person for selective prosecution purposes as one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant – so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan – and against whom the evidence was as strong or stronger than that against the defendant.

*Smith*, 231 F.3d at 810.

Simply put, to be successful on his selective prosecution claim, Scrushy "must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in that or substantially the same manner." *Id.* at 811. He does not make this showing.

Scrushy contends that while he was prosecuted for making campaign contributions to former Governor Don Siegelman, "a significant number of similarly situated individuals, all with ties to the Republican Party and/or the Republican Governor of Alabama, Bob Riley," were not. (Doc. # 953 at 41). This argument echos Scrushy's defense during trial that his actions were not illegal but that he was exercising his constitutional rights to support the candidate of his choice. This defense was unsuccessful at trial as evidenced by the jury verdict. Consequently, Scrushy stands convicted of bribery, and he must demonstrate that other individuals who engaged in similar acts of bribery were not prosecuted. This he fails to do. Scrushy points to Georgia Thompson, Dr. Cyril Wecht, Justice Oliver Diaz, Judge Wes Teel, Judge John Whitfield and attorney Paul Minor as his comparators. See Doc. # 953 at 8-9 ("All of these cases parallel the pattern of politicized prosecutions against prominent Democrats or supporter of Democratic candidates or their causes based on questionable facts and/or aggressive legal theories, timed to have maximum impact on political races in progress, just as occurred in the instant case.")[3]

---

[3] These comparators avail Scrushy nothing because they were all prosecuted. In order to be successful on his selective prosecution claim, Scrushy must identify others who engaged in the same or similar criminal action (i.e. committed acts of bribery) but were not prosecuted.

The prosecution of Georgia Thompson is a good example of the problem with Scrushy's argument. "Thompson steered [a] contract to Adelman Travel, the low bidder, even though other members of the selection group rated its rivals more highly. A jury convicted Thompson of violating 18 U.S.C. § 666 and § 1341." *United States v. Thompson,* 484 F.3d 877, 878 (7th Cir. 2007). The prosecution's § 666 theory was that Thompson "intentionally misapplie[d]" more than $5,000 by diverting it from another bidder to Adelman Travel. *Id.* at 880. About this theory, the Seventh Circuit said

> Section 666 is captioned "Theft or bribery concerning programs receiving Federal funds", and the Supreme Court refers to it as an anti-bribery rule. *See Sabri v. United States*, 541 U.S. 600, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004); *Fischer v. United States*, 529 U.S. 667, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000); *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Neither Thompson nor anyone else in state government was accused of taking a bribe or receiving a kickback. A statute's caption does not override its text, but the word "misapplies" is not a defined term. We could read that word broadly, so that it means any disbursement that would not have occurred had all state laws been enforced without any political considerations. Or we could read it narrowly, so that it means a disbursement in exchange for services not rendered (as with ghost workers), or to suppliers that would not have received any contract but for bribes, or for services that were overpriced (to cover the cost of baksheesh), or for shoddy goods at the price prevailing for high-quality goods. All of these conditions were satisfied in cases such as *United States v. Spano*, 421 F.3d 599 (7th Cir.2005), and *United States v. Martin*, 195 F.3d 961 (7th Cir.1999). None is satisfied here.

484 F.3d at 881.

In short, Thompson was not prosecuted to taking a bribe and certainly was not convicted of bribery. Thompson's case is not that of a similarly situated comparator. Moreover, Thompson was prosecuted; consequently Scrushy does not show by reference to

this case that others who committed similar crimes were not prosecuted. Thus, even though Scrushy rails about a "pattern of politicized prosecutions," a contention which *arguably* might show the existence of the motivation prong of a selective prosecution claim, the lack of similarity in the nature of Thompson's prosecution undercuts his claim.

And the other asserted comparators have the same defect. All were prosecuted. Scrushy fails to identify anyone who committed bribery but was not prosecuted. Scrushy has failed to meet the rigorous standard justifying discovery in aid of his selective prosecution claim.

Scrushy's claim for discovery on his selective prosecution claim fails for another reason. In order to be entitled to discovery, Scrushy must demonstrate that the evidence he seeks is "newly discovered." Scrushy relies heavily on detailed allegations recited by the April 17, 2008 report prepared for John Conyers, Jr., Chairman of the United States House of Representatives Committee on the Judiciary ("the Conyers Report"). In this report, the Committee on the Judiciary investigated allegations that "political considerations may have improperly influenced federal criminal prosecutions in a number of cases around the country." (Doc. # 953, Ex. I-A, at i). The Conyers report relied on allegations by Attorney Dana Jill Simpson ("Simpson") to substantiate its contention that the prosecution of former Democrat Governor Don Siegelman was motivated by politics. (Doc. # 953, Ex. I-A, at 7-19). Simpson relayed conversations she allegedly had with Rob Riley, the son of Republican Governor Bill Riley, that implicated Karl Rove, the Department of Justice and United States

Attorney Leura Canary's husband in efforts to prosecute Siegelman. (Doc. # 953, Ex. I-A, at 9-10). The report concludes with the recommendation that "a thorough and fair review by the Executive Branch [of the Department of Justice]" be undertaken. (*Id*. at 34).

Thereafter, in 2009, Tamarah Grimes, a paralegal with the United States Attorney's office for the Middle District of Alabama made numerous accusations against the United States Attorney, and others regarding the prosecution of defendants Siegelman and Scrushy. As a result of these allegations, the Attorney General of the United States and the Office of Special Counsel investigated the allegations and concluded that they were unfounded.

However, Scrushy's motions for a new trial and for discovery were filed before the investigations were complete. Consequently, when the motions were filed, Scrushy contended that because Siegelman was selectively prosecuted, by extension, so too was he. Because the allegations contained in the Conyers Report, and from Simpson and Grimes were released after his trial, Scrushy argues that the evidence he now seeks related to these allegations is newly discovered. While these specific allegations were not made until after his trial, Scrushy's selective prosecution claim fails as a matter of law because it is clear that the defendants in this case had knowledge of and were claiming selective prosecution as early as three years prior to the commencement of trial. Defense counsel for Scrushy, Arthur Leach, submitted a letter to the Conyers Committee as well as an affidavit in this case in which he stated that, on April 6, 2006, he met with then-acting head of the Department of Justice's Public Integrity Section, Andrew Lourie. According to Leach, at the conclusion of

this meeting, "it appeared . . . that some arrangement" for Scrushy to enter a plea would be approved." (Doc. # 953-8, Ex. I-G, at 6, ¶ 18.) After the plea agreement was rejected by the United States, Leach was told by Lourie that the "'decision was made over [his] head.'" (*Id.* at 7, ¶ 20). Lourie also informed Leach that the decision to reject the deal was made higher that the Assistant Attorney General for the Criminal Division, which meant it came from the Attorney General, the Deputy Attorney General, or the White House. (*Id.*)

Furthermore, Doug Jones, defense counsel for Scrushy's co-defendant former Governor Don Siegelman, testified before the House of Representatives Committee that the Department of Justice's alleged switch in its position on this case occurred in mid-2004. (Doc. # 953, Ex. I-A, at 12). Jones further testified that the Department of Justice had "written off" any investigation of Siegelman, but then he was informed that "'there had been a meeting in Washington'" that led to a "'review of the case top to bottom.'" (Conyers Rep. (quoting Jones's Testimony before the Committee)). As early as 2005, counsel was aware of the potential for a selective prosecution claim and the involvement of officials in Washington D.C. in the decision to prosecute.

To be successful on his motion for new trial, Scrushy must demonstrate that the evidence he now seeks was discovered *after* trial, and that he exercised due diligence to discover the evidence. *See Jernigan*, 341 F.3d at 1287; *Schlei*, 122 F.3d at 991. Because Scrushy cannot meet these two prongs of the new trial test, he is not entitled to discovery on this issue. First, while Scrushy requests voluminous email and other correspondence, he does

not detail the "evidence" contained therein that he contends constitutes newly discovered evidence. Presumably, he seeks discovery to find out whatever additional information may be gleaned from the Conyers Report investigation or the Office of Special Counsel or Office of Professional Responsibility investigations which would then be 'newly discovered.' The court has thoroughly reviewed *in camera* the documents that Scrushy seeks.[4] They do not support his hypothesis that other evidence exists to support his claim, nor is there anything in the material provided by the United States that is contrary to the evidence already in the hands of the defense.

Moreover, Scrushy has failed to come forward with any evidence to suggest that he exercised due diligence to discover whatever evidence he contends is out there waiting to be discovered. It is clear that the defendant knew about the possibility of a selective prosecution claim well before trial. However, Scrushy argues that there exists evidence that was not available until after trial. "Newly discovered evidence is evidence that could not have been discovered with due diligence at the time of trial." *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978). The defendant has made no showing that he exercised any diligence in attempting to discover any additional evidence of selective prosecution prior to trial. *See United States v. Mesa*, 660 F.2d 1070, 1077 (11th Cir. 1981).

Finally, at oral argument on this motion, counsel conceded that there was evidence to suggest the basis for a selective prosecution claim, but counsel made a strategic decision not

---

[4] The Office of Special Counsel report and the Conyers Report are now both publically available to the defense.

to pursue the claim at that time.[5]  *See Beasley*, 582 F.2d at 339.  Because Scrushy cannot

demonstrate that he exercised due diligence to discover the evidence he now seeks, the

evidence is not considered newly discovered for purposes of a motion for new trial.  *See Lee*,

68 F.3d at 1273-74; *Campa*, 459 F.3d at 1151; *Jernigan*, 341 F.3d at 1287; *Schlei*, 122 F.3d

at 991; *Starrett*, 55 F.3d at 1554.  Consequently, he is not entitled to discovery on this claim.

 **2.  Judicial Misconduct**.  Scrushy next asserts that the Court engaged in judicial

misconduct when it communicated *ex parte* with the United States Marshal and the United

States Postal Inspectors about certain e-mails purportedly sent between jurors during the trial.

According to Scrushy, "[i]n order to demonstrate the full extent of the prejudice that he

suffered," he needs access to all *ex parte* communications between the court and these

government representatives.  (Doc. # 953 at 15).

 This is not the first time this issue has been addressed and rejected.

 A theme that runs through the defendants' motion to recuse is that the court
 handled the issue improperly – that it should have granted a new trial or at
 least conducted or authorized a broader investigation.  I disagree.  And more
 importantly, the Eleventh Circuit has now disagreed.  *See Siegelman II*, 640
 F.3d at 1187 (11th Cir. 2011).   The importance of this cannot be
 overemphasized:  the Eleventh Circuit has squarely rejected the defendants'
 position that the district court should have granted a new trial or at least
 conducted or authorized a broader investigation.

*United States v. Siegelman*, 799 F.Supp.2d 1246, 1254 (M.D. Ala. 2011) (Hickle, J.).

 After fully discussing the defendants' claims regarding Judge Fuller's receipt of

---

 [5] Counsel conceded at oral argument that one reason he did not file a pretrial motion was because
he did not want to procedurally barred by "the law of the case," if he lost on the issue.  Consequently, he did
not raise the issue prior to trial.

extrinsic information from the United States Marshal and his *ex parte* communications with United States Postal Inspectors regarding several emails that were allegedly written by and sent to jurors, United States District Judge Hinkle specifically rejected the defendant's new trial claim on this basis. "[U]nder these circumstances, the judge's receipt of the extrinsic evidence entitled the defendants to neither a new trial nor recusal of the judge." *Id* at 1258. Judge Hinkle concluded that the defendants' motion to recuse based on the *ex parte* communications was unfounded. *Id*. at 1261.

More importantly, however, the Eleventh Circuit has considered the issue of the emails and determined that further investigation into the issue was not warranted.

> Permission to attack jury verdicts by postverdict interrogrations of jurors would allow defendants to launch inquiries into jury conduct in the hope of discovering something that might invalidate the verdicts against them.
>
> *    *    *
>
> We conclude, therefore, that the district court did not abuse its discretion in deciding that the purported emails, assuming they are authentic, do not entitle defendants to a new trial.

*Siegelman,* 640 F.3d 1159, 1186-87. That determination is binding precedent on this court.

Although Scrushy reframes the issue now to allege that Judge Fuller engaged in judicial misconduct by communicating with the United States Marshal and United States Postal Inspectors about their investigations into these emails, the conclusions of the Eleventh Circuit and Judge Hinkle's findings of fact and conclusions of law are now the law of the case and binding on this court. "The law of the case doctrine bars relitigation of issues that

were decided, either explicitly or by necessary implication, in an earlier appeal of the same case." *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005). *See also United States v. Escobar–Urrego,* 110 F.3d 1556, 1560 (11th Cir. 1997) ( "[u]nder the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case").

The only reason Scrushy advances in favor of discovery on this issue is that he may determine "the full extent" of the prejudice he has allegedly suffered. The problem with his argument, however, is Scrushy does not identify *any* prejudice that he has allegedly suffered. The defendant's motion to recuse was filed after he filed his motion for new trial. He sought to have another Judge review this matter which has now happened. The court should not, and will not revisit this issue. Accordingly, the court will deny the motion for discovery on this issue.

**3. United States Attorney Recusal**. Scrushy argues that United States Attorney Leura Canary's failure to honor her recusal[6] caused him to be "deprived of a disinterested prosecutor." In so framing the argument, Scrushy contends that the error is structural in nature and thus, does not require him to demonstrate prejudice. *See United States v. Curbelo*, 343 F.3d 273, 280 (4th Cir. 2003) ( structural errors ""invalidate the conviction" without any showing of prejudice.") Because structural errors "are so intrinsically harmful, if established [would] . . . require automatic reversal (*i.e*. "affect substantial rights") without regard to their

---

[6] Because Scrushy frames the issue as one of recusal, the court will refer to the issue as such. However, because his claim involves the United States Attorney, it is more properly a claim of Canary's failure to abide by her disqualification.

effect on the outcome." *Neder v. United States*, 527 U.S. 1, 7 (1999). Relying on *Young v. United States ex rel Vuitton et Fils S.A.*, Scrushy argues that the involvement of the United States Attorney after she recused herself rises to the level of a structural error requiring "reversal without regard to the facts or circumstances of the particular case." (Doc. # 953 at 53 *quoting Young v. United States ex rel Vuitton et Fils S.A.* 481 U.S. 787, 808-09 (1987). The court disagrees.

While the Court, in *Young*, held that the 'appointment of an interested prosecutor' was error, the facts of *Young* are easily distinguishable from the case at bar. In *Young*, the court appointed as special prosecutors in a criminal contempt prosecution for aiding and abetting violations of a permanent injunction prohibiting infringement of manufacturer's trademark the same attorneys who represented the holders of the trademark. The Court held that where "a prosecutor represents an interested party, . . . the ethics of the legal profession *require* that an interest other than the Government's be taken into account." *Id*. at 807.[7] United States Attorney Canary was not appointed specifically to prosecute this case. Moreover, she and her office represented the United States in this matter; they did not represent a private stakeholder.

Furthermore, twelve years later, the United States Supreme Court did not cite *Young* as one of those "very limited class of classes" when discussing structural errors in criminal

---

[7] Three Justices specifically disagreed that the appointment of an interested prosecutor amounted to a structural error. *Young v. United States ex rel Vuitton et Fils S.A.* 481 U.S. 787, 826-27 (1987) (Powell, J., *concurring in part and dissenting in part*.)

cases.

> We have recognized that "most constitutional errors can be harmless." *Fulminante, supra,* at 306, 111 S.Ct. 1246. "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Indeed, we have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction)).

*Neder*, 527 U.S. at 8.

Despite the opportunity, the Supreme Court did not conclude that denial of an disinterested prosecutor rose to the level of a structural error.[8] Consequently, Scrushy's reliance on *Young* is misplaced, and he must therefore demonstrate "good cause" to obtain discovery on this claim. Specifically, Scrushy must state "specific allegations . . . [that] show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy*, 520 U.S. at 908-09. This he has not done. The United States Attorney recused herself from this matter and was screened from the prosecution of this case. There is no evidence that the "wall" erected between the United States Attorney

---

[8] In his motion for new trial, Scrushy neither discusses nor distinguishes *Neder*, *supra*.

and the prosecution team was breached in any significant or material manner.

While it is undisputed that several emails indicated Canary's interest in the case, there is no evidence that these messages in any way influenced or directed any actions taken by the Acting United States Attorney or other prosecutors in this case. The first email, dated April 6, 2005, was from First Assistant Patricia Snyder informing the Chief of the Civil Division, Stephen Doyle, that paralegal, Tamarah Grimes would be assigned to the criminal division to help on this case. The second email, dated September 15, 2005, was from Canary to administrative staff about a contract employee working on this and other cases. There is no evidence that this email was sent to any member of the prosecution team. The third email, dated September 19, 2005, was from Canary to members of the prosecution team, forwarding an email she received from defendant Don Siegelman. In the email, Canary suggests the possibility of seeking a 'gag' order to prohibit Siegelman from speaking to the press. The prosecutors did not seek a 'gag' order and took no action on Canary's suggestion.

On January 26, 2005, Canary did send an email to the Department of Justice reiterating her support of additional and continued funding of this case. Canary had previously received a copy of an email, dated November 1, 2005, indicating that a request for funding had been granted. An undated email indicates that Canary would be briefed on an issue involving funding of this litigation. Finally, the defendants point to a February 23, 2003 memorandum from Canary to the Department of Justice seeking additional funding for this litigation.

At oral argument, the defendant asserted, for the first time, that when Canary interjected herself into issues of allocation of resources for this case and within the office, she was acting with prosecutorial authority that infected the prosecution of this case. According to the defendant, resource allocation is "the heart of the United States's Attorney's authority" and, thus, her involvement after recusing herself undoubtedly impacted this prosecution. Unquestionably, discretionary decisions about prosecutions entail consideration of how to allocate scarce resources. Scrushy's resource allocation argument does not bear the weight he places on it. Scrushy argues that Canary's involvement undoubtedly impacted this prosecution. But the facts show that the decision to prosecute Scrushy had already been made. Indeed, as already noted, Scrushy laments in another form that very decision to prosecute complaining that it was made "over the head" of the chief of the Department of Justice's Public Integrity Section. Canary recused herself in 2002. Three of the four communications about which Scrushy complains occurred in 2005.[9] During that time, with the exception of a September 19, 2005 email from Siegelman that Canary forwarded to the prosecutors, Canary's involvement was limited to narrow funding issues and personnel matters. Scrushy points to no prejudice he suffered as a result of Canary's communications. He provides the court with no credible evidence that the United States Attorney directed, managed, influenced or controlled any aspect of the prosecution of the case. Her minimal involvement in the allocation of resources within the United States Attorney's office does

_____

[9] The other communication was the February 23, 2003 memorandum from Canary to the Department of Justice.

not show that she was involved in the prosecution of this case but rather that the conduct of the case had an impact on the other business of the office. This is not a case in which Canary engaged in extensive misconduct during the investigation or involved herself in the direct supervision of the prosecution. *See United States v. Omni Int'l Corp.*, 634 F.Supp. 1414 (D.C. Md. 1986).

Conduct that may be "inappropriate does not necessarily rise to the level of deprivation of a fair trial." *See United States v. Canino*, 949 F.2d 928 (7th Cir. 1991). While it might have been better if Canary had not involved herself in any manner with the trial of this case, Scrushy has not demonstrated that he was deprived of a fair trial by her actions. He has not alleged, and he cannot show, that her actions in any way affected the trial of this case, or somehow infected the jury. Scrushy is entitled to a fair trial, not a perfect one. *See United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005).

Scrushy argues that "[b]ased on the existence of these three e-mails, it is reasonable to infer that many other e-mails were written or received by U.S. Attorney Canary which would prove her continued involvement in this case, and demonstrate further the false statements of the Government intended to cover up this continued involvement." (Doc. # 953 at 20). The problem with this contention is that it is rank speculation, and simply wrong speculation at that. "[G]ood cause for discovery cannot arise from mere speculation." *Arthur*, 459 F.3d at 1311. In addition, the court has laboriously reviewed the documents provided to it by the government related to this issue. This is not a case in which there is any

conflicting evidence. In this case, there is *no* evidence to support the defendant's supposition that "other emails exist." There is nothing in the material provided to the court that is contrary to the evidence already in Scrushy's possession. This is not a matter of withholding any documents; there are no other documents. Accordingly, the defendant's motion for discovery on this issue will be denied.

    **4. Prosecutorial Misconduct**. Scrushy next complains that he was deprived of a fair trial because of prosecutorial misconduct.[10] Specifically, Scrushy complains that the prosecutors improperly coached witness Nick Bailey ("Bailey"), withheld exculpatory and impeaching evidence, and failed to correct false or misleading testimony during the trial, thereby violating his due process rights.[11] Scrushy relies on a declaration by Bailey, a transcript of a *Sixty Minutes* news show during which Bailey was interviewed while he was incarcerated, and the declarations of others[12] to assert that new evidence now exists to support his claims.

    Of course, a prosecutor has a duty to provide a criminal defendant with all evidence materially favorably to the defendant's defense. *Brady v. Maryland*, 373 U.S. 83 (1963).

---

[10] Notwithstanding the delineation by Scrushy, the court considers his request for discovery in support of his claims of prosecutorial misconduct in toto.

[11] Scrushy also complains that the United States engaged in misconduct by failing to report 'improper' contacts with jurors, and participating in *ex parte* communications with Chief Judge Fuller. These issues have previously been addressed and based on the law of the case doctrine, not properly before the court now. *See United States v. Escobar–Urrego,* 110 F.3d 1556, 1560 (11th Cir. 1997)

[12] Scrushy relies on the declarations of Luther Stancel Pate, Brad Garrett, Robert Harrison Hickman, and Amy Methvin.

This duty extends to evidence relating to the credibility of a witness when the defendant's guilt or innocence may turn on that witness's credibility. *Napue v. Illinois,* 360 U.S. 264 (1959). *See also United States v. Bagley,* 473 U.S. 667 (1985) (no distinction between impeachment and exculpatory evidence). The law is clearly established that impeachment evidence falls well within the realm of *Brady* material which must be produced by the prosecution. *Bagley*, 473 U.S. at 676.

The crux of Scrushy's argument centers around the testimony of Bailey. Scrushy contends that his newly discovered evidence suggests that Bailey's testimony was scripted by the government, and that the government used threats and promises to shape Bailey's testimony. He further argues that newly discovered evidence demonstrates that Bailey met with the prosecutors many more times than Bailey testified to at trial, and that the government failed to correct Bailey's erroneous testimony on this issue. Finally, Scrushy contends that based on the number of times Bailey met with government agents, there must be more FBI 302s and notes that the government did not turn over to the defense. According to Scrushy, these actions violate *Brady, Giglio,*[13] *Napue*, and the Jencks Act.[14]

The government denies Scrushy's allegations. More importantly, however, Scrushy was well aware that Bailey met with prosecutors and agents a number of times prior to trial to discuss his testimony because, at trial, defense counsel attacked Bailey's credibility and

---

[13] *See Giglio v. United States*, 405 U.S. 150 (1963)

[14] *See* 18 U.S.C. § 3500(b)

veracity on these matters. Bailey testified in this case for three and a half days. His testimony encompasses over eight hundred (800) pages of trial transcript. During cross-examination, Bailey repeatedly denied that the prosecution scripted his testimony. (Tr. Transcript at 379, 555-56, 724, 931, 1163-65). In his declaration filed in support of Scrushy's motion for a new trial, Bailey does not state that he testified falsely. (Doc. # 953, Ex. V-H). He does not claim that government agents or prosecutors threatened or pressured him, and he does not contend that he changed his account of events in any manner previously undisclosed to the defense. (*Id.*)

With no help from Bailey, Scrushy depends on the declarations of Luther Stancel Pate, Robert Harrison Hickman, and Amy Methvin to support his claims that Bailey's trial testimony was scripted and that he was pressured by the government to testify falsely. Scrushy's reliance is wholly misplaced. The declarations of Pate, Hickman and Methvin are not only replete with inadmissible hearsay and not based on personal knowledge but are premised on these persons' interpretations and perceptions of Bailey's thoughts, actions and motives. For example, in his declaration, Luther Pate asserts that

> [b]ased on many, many conversations with Nick over the past 8 years, I have no doubt that he was both intimidated and manipulated by the government at the Siegelman/Scrushy trial that Nick wasn't sure was true. Nick said as much himself in our recent conversation when he said he "can't believe" what he said in his own testimony.

(Doc. # 953-60, Ex. V-E at 10-11, ¶ 19). The declarations are inconsistent with Bailey's trial testimony which Bailey himself has never recanted. Consequently, the declarations of Pate,

Hickman and Methvin are unreliable and suspect. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Claritt v. Kemp*, 336 Fed. Appx. 869, 870 (11th Cir. 2009); *Williams v. United States*, 239 Fed. Appx. 553, 558 (11th Cir. 2007).

During trial, Bailey testified that he met with prosecutors or agents "two or three dozen" times, and that the prosecutors were present at "less than two dozen" meetings. (*Id*. at 1090 & 1018). Relying on a *Sixty Minutes* interview, Scrushy alleges that Bailey now admits he spoke with prosecutors "60-70 times." Scrushy conveniently ignores Bailey's own declaration in which he admitted that while he "would estimate that [he] spoke with government prosecutors or agents approximately 60 to 70 times . . . a number of those meetings and conversations did not involve Governor Siegelman or Mr. Scrushy." (Doc. # 953, Ex. V-H, at 1, ¶ 4). The jury was well aware that Bailey met with prosecutors and agents multiple times, and that Bailey was testifying with the hope of receiving a recommendation from the prosecution for a light sentence. Such possible discrepancies in the number of times Bailey met with agents is not material and would not require a require a new trial.

Nonetheless, based at least in part on this numerical discrepancy, Scrushy argues that the United States failed to turn over all notes and FBI 302 reports and seeks an opportunity to review the government's documents. The United States provided to the court for an *in camera* review all of the documents at issue. The court has now carefully reviewed those documents and concludes that the documents do not support Scrushy's position. Despite

Scrushy's contention that there 'should' be more FBI 302s, there are not. The only documents not disclosed to the defense consist of internal prosecution memos related to the investigation or prosecution of this case and internal correspondence concerning relationships among and between the prosecutors. These documents do not contain exculpatory information. *See* FED.R.CRIM.P. 16(a)(2).

Finally, to the extent that Bailey's declaration can be considered an attempt to recant his trial testimony, this argument avails Scrushy nothing.[15] "Skepticism greets any recantation of testimony by a witness in a criminal case, because where a witness later recants testimony given at trial, "the witness either is lying now, was lying then, or lied both times.'" *United States v. Earles*, 983 F.Supp. 1236 (N.D. Iowa 1997), *aff'd sub nom, United States v. Papajohn*, 212 F.3d 1112 (8th Cir. 2000).[16] Scrushy has failed to show that Bailey perjured himself or that the government failed to correct any allegedly false testimony. *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).

In furtherance of his quest for discovery. Scrushy argues in his motion for new trial (doc. # 953) as follows:

> Multiple sources, including Nick Bailey himself, confirm the existence of a notebook which Bailey used during his interviews and trial preparation. EXHIBITS V-E, F, G & H. Through counsel, Bailey has voluntarily provided

---

[15] Bailey's testimony cannot even be described as recanted. In his declaration, Bailey does not allege that he testified falsely in any respect. He does not assert that the government threatened him or pressured him.

[16] In addition to the recantation issue this case also involved an issue of the admissibility of grand jury testimony of trial witnesses. The court's holding on that question was abrogated by *Crawford v. Washington*, 541 U.S. 36 (2004).

a limited number of pages of that notebook, as well as discussed its contents during interviews with Defendant's investigators at which the notebook was present and in the custody of Bailey's attorney . . .

*Id.* at 75.

Scrushy contends that this notebook is "of great significance to Defendant's motion for new trial" because it "certainly contains evidence of the Government's activities in shaping and changing Bailey's testimony from its original version to the version that was used at trial." *Id.* at 75-76. Pursuant to the order of the court (doc. # 1040), the former attorney for Nick Bailey produced to the court for *in camera* inspection the contents of the notebook which are still in existence. The court has carefully reviewed these documents which contain absolutely no indication in any form whatsoever that the government in any way shaped or caused Bailey to change his testimony.

The notebook documents primarily consist of handwritten notes written by Bailey. A comparison of these notes with Bailey's testimony at trial shows that in some instances the trial testimony contains more elaboration of the factual situations about which Bailey testified. The court emphasizes that these elaborations do not show contradictions between the notes and Bailey's testimony. But even so, at best the material could be considered impeaching, and it is well established that "[newly discovered impeaching evidence does not justify a new trial." *United States v. Branca*, 677 F.2d 59, 61 (11th Cir. 1982); *United States v. Hirst*, 668 F.2d 1180, 1185 (11th Cir. 1982). The materials were never in the possession of the government, so *Bagley, supra,* does not apply. The court concludes that Scrushy's

25

motion for discovery on this issue is due to be denied.

## CONCLUSION

Scrushy's motions for a new trial and his concomitant motions for discovery contain a bevy of allegations that rest on speculation, inneudo and inference. Unfortunately, the allegations are not supported by the facts. After a careful and thorough *in camera* review all of the documents at issue, the court concludes that an evidentiary hearing is not required[17] and that Scrushy has failed to meet the exacting standards necessary to support his motion for discovery.

Accordingly, for the reasons as stated, it is

ORDERED that defendant Scrushy's motions for discovery (docs. # 955 & 985) be and are hereby DENIED.

Done this 18th day of January, 2012.

        /s/Charles S. Coody        
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[17] Although the defendant asserts that this case involves "certain unique situations" that mandate an evidentiary hearing, the court disagrees. *See United States v. Hamilton*, 559 F.2d 1370, 1373-74 (5th Cir. 1977) ("Where evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession.") For the reasons stated herein, this case does not rise to the level of a "unique" situation requiring an evidentiary hearing.